IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GEORGE TRAMMELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:15-CV-052-RP |
| | § | |
| KEVIN FRUGE, MIKE KROGMANN, | § | |
| BRIAN NEVEU, E.F. DELAROSA, | § | |
| HUNTER WEBB, M. GARZA, | § | |
| SHELBY INGLES, AND CITY OF | § | |
| ROUND ROCK, TEXAS | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are three motions for summary judgment by Defendants. The first was filed on May 18, 2016, on behalf of Defendants E.F. Delarosa, Mike Krogmann, and Hunter Webb. (Dkt. 24.) The second was filed on May 20, 2016, on behalf of Defendants Kevin Fruge, Marciano Garza, Shelby Ingles and Brian Neveu. (Dkt. 25.) The third was also filed on May 20, 2016, on behalf of the Defendant City of Round Rock. (Dkt. 26.) Through these three motions, each named defendant has moved the Court for summary judgment. Also before the Court are Plaintiff George Trammell's response to each motion for summary judgment, and defendants' replies. After reviewing the briefing, the relevant law, and the factual record, the Court issues the following order.

## I. BACKGROUND

Plaintiff George Trammell ("Mr. Trammell" or "Plaintiff") filed this action against defendants Kevin Fruge, Mike Krogmann, Brian Neveu, E.F. Delarosa, Hunter Webb, Marciano Garza, Shelby Ingles, and the City of Round Rock ("Defendants"), on January 21, 2015 pursuant to 42 U.S.C. § 1983 and § 1988, alleging that the defendants violated his rights under the Fourth and Fourteenth Amendments during his arrest on the morning of January 21, 2013. Each of the seven

1

individuals named in the suit was a police officer with the City of Round Rock at the time of Mr. Trammell's arrest. Mr. Trammell claims that the defendant officers violated his right to be free of unlawful restraint and excessive force, and that the City of Round Rock is liable to him for failing to supervise and train its police officers.

On April 24, 2015, Defendants moved to dismiss the action. On June 2, 2015, the Court granted in part and denied in part the motion. The Court dismissed all claims against the seven officers in their official capacity and dismissed Mr. Trammell's claim for punitive damages against the City of Round Rock, but otherwise denied Defendants' motion.

Defendants now move for summary judgment. Defendants Krogmann, Delarosa, and Webb argue that they were not involved in Mr. Trammell's arrest and thus should be dismissed. Defendants Fruge, Neveu, Garza, and Ingles argue that there was no constitutional violation and that their actions are protected by qualified immunity. Finally, the City of Round Rock argues that City policies are constitutional, and that there is insufficient evidence to show municipal liability. Mr. Trammell responded to each of these motions. In his response, Mr. Trammell indicated that he intends to dismiss his claims against defendants Delarosa and Webb, but argues that there are genuine issues of fact that require determinations by a jury with respect to claims against each of the other defendants.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).

The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view this evidence in the light most favorable to the non-movant, *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993), and should "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A court may, however, "assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Poole*, 691 F.3d at 627. Thus, where the record discredits a party's description of the facts, the court "should instead consider 'the facts in the light depicted by the videotape.'" *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

### III. TRAMMELL'S ARREST

Mr. Trammell's arrest was recorded by the dash cam video of Officer Fruge's and Officer Ingles's cars. (Fruge Aff. Ex. 3–4, Dkt. 25-1.) Officer Neveu's recording captured much of the audio of the arrest. (Fruge Aff. Ex. 5, Dkt. 25-1.) The parties submitted these videos as evidence, along

with affidavits, police reports, Mr. Trammell's medical records, and other evidence. Based on this evidence, the Court makes the following findings of undisputed fact.

On January 21, 2013 at approximately 12:00 a.m. the Round Rock Police Department received a 911 call about a motorcyclist who was leaving the New El Goal Post on North Mays Street, lost control of and wrecked his motorcycle, and was believed to be intoxicated. (911 Recording, Dkt 25-1; Fruge Aff. ¶ 2, Dkt. 25-1.) Round Rock police officers were informed of the situation and dispatched to the scene. (Fruge Aff. ¶ 3, Neveu Aff. ¶ 3; Garza Aff. ¶ 3; Ingles Aff. ¶ 3, Dkt. 25-1.) Officer Fruge arrived first at the scene. (Fruge Aff. Ex. 3, Dkt. 25-1.) Bystanders directed him across the street to where Mr. Trammell's motorcycle was parked in the Time Warner Cable parking lot. (Fruge Aff. ¶ 3 & Ex. 3; Dkt. 25-1.)

Upon exiting his vehicle, Officer Fruge said to Mr. Trammell "Hey, sir, step away from the motorcycle." (Trammell Aff. ¶ 14, Dkt. 30-1; Fruge Aff. Ex. 3, Dkt. 25-1.) Mr. Trammell was on the phone at the time and did not respond. (Trammell Aff. ¶ 15, Dkt. 30-1; Fruge Aff. Ex. 3, Dkt. 25-1.) As Officer Fruge continued his approach to the rear left side of the motorcycle, he repeated his order again, saying "Step away from the motorcycle." (Trammell Aff. ¶ 16, Dkt. 30-1; Fruge Aff. Ex. 3, Dkt. 25-1.) Mr. Trammell responded this time, saying "What?" (*Id.*) Officer Fruge repeated himself a third time, more loudly, saying "Step away from the motorcycle." (Trammell Aff. ¶ 17, Dkt. 30-1; Fruge Aff. Ex. 3, Dkt. 25-1.) Upon this third order, Mr. Trammell took a couple steps away from the motorcycle and toward Officer Fruge. (*Id.*)

Officer Fruge then asked Mr. Trammell "What's goin' on?" (Trammell Aff. ¶ 18, Dkt. 30-1; Fruge Aff. Ex. 3, Dkt. 25-1.) Mr. Trammell did not directly respond. (*Id.*) Officer Fruge quickly repeated his question again, saying "What's going on?" (*Id.*) Mr. Trammell responded, saying "Nothing, I parked my bike." (*Id.*) Officer Fruge then asked Mr. Trammell whether he wrecked his bike, which Mr. Trammell denied. (Trammell Aff. ¶ 22, Dkt. 30-1; Fruge Aff. Ex. 3, Dkt. 25-1.)

Officer Fruge asserts that during this exchange, Mr. Trammell smelled strongly of alcohol and was slurring his speech. (Fruge Aff. ¶ 6, Dkt. 25-1.) Officer Fruge asked how much Mr. Trammell had to drink, to which Mr. Trammell responded "A whole lotta nothin." (Trammell Aff. ¶¶ 23, 26, Dkt. 30-1; Fruge Aff. Ex. 3, Dkt. 25-1.) Officer Fruge asked how much that was, and Mr. Trammell repeated the same answer, "A whole lotta nothin." (Trammell Aff. ¶¶ 29–30, Dkt. 30-1; Fruge Aff. Ex. 3, Dkt. 25-1.) Officer Fruge asked Mr. Trammell again how much he'd had to drink, and Mr. Trammell said "I'm not going to answer." (Trammell Aff. ¶¶ 31–32, Dkt. 30-1; Fruge Aff. Ex. 3, Dkt. 25-1.) Officer Fruge said "Well, can you walk towards me?" Mr. Trammell responded, "No." (Trammell Aff. ¶ 34, Dkt. 30-1; Fruge Aff. Ex. 3, Dkt. 25-1.) Officer Fruge then ordered Mr. Trammell to place his hands behind his back. (Trammell Aff. ¶ 36, Dkt. 30-1; Fruge Aff. Ex. 3, Dkt. 25-1.) Mr. Trammell did not place his hands behind his back; instead, he said "I'm not answering your questions. I'm not going to jail." (Trammell Aff. ¶¶ 36–38, Dkt. 30-1; Fruge Aff. Ex. 3, Dkt. 25-1.) During this exchange, Mr. Trammell was taking off his leather jacket because he was hot. (Trammell Aff. ¶ 37, Dkt. 30-1; Fruge Aff. Ex. 3, Dkt. 25-1.)

Immediately after Mr. Trammell said he was not going to jail, Officer Fruge walked toward Mr. Trammell, and tried to grab his right arm to place handcuffs on him. (Trammell Aff. ¶ 40, Dkt. 30-1; Fruge Aff. Ex. 4, Dkt. 25-1.) Mr. Trammell reacted by pulling his arm forward and leaning away from Officer Fruge, and as he was doing this, Officer Fruge used his knee to strike Mr. Trammell on the outside of his right thigh. (Trammell Aff. ¶ 46, Dkt. 30-1; Fruge Aff. Ex. 4, Dkt. 25-1.) This strike made Mr. Trammell lose his balance, (Trammell Aff. ¶ 46, Dkt. 30-1), and Officers Fruge, Garza, and Neveu brought Mr. Trammell to the ground, injuring his face. (Trammell Aff. ¶¶ 46, 49–50, Dkt. 30-1.) Officer Garza put Mr. Trammell in a headlock to bring him to the ground, although while Mr. Trammell was on the ground, none of the officers were above Mr. Trammell's shoulders or neck. (Trammell Aff. ¶¶ 47, 53, Dkt. 30-1.)

While on the ground the officers struggled to get ahold of Mr. Trammell's arms, which were underneath him. (Fruge Aff. ¶ 6, Neveu Aff. ¶¶ 5–6, Garza Aff. ¶ 7, Dkt. 30-1.) They repeatedly ordered him to put his hands behind his back and stop resisting. (Fruge Aff. Ex. 5, Dkt. 25-1.) They also used knee strikes to Mr. Trammell's arms, thighs, and ribs to try to subdue and handcuff him.[1] Mr. Trammell yelled and cussed at the officers as they were trying to handcuff him. (Fruge Aff. Ex. 4, Dkt. 25-1.) Mr. Trammell claims that for a brief period of time while on the ground he lost memory and felt that he could not breathe. (Trammell Aff. ¶ 51, Dkt. 30-1.) He also shouted that his arm was fused—meaning he has rod extending from his hand to the upper part of his forearm (Trammell Aff. ¶ 40)—but the officers had difficulty understanding what he was saying at the time. (Fruge Aff. Ex. 4, Neveu Aff. ¶ 6, Dkt. 25-1.) About two minutes after Mr. Trammell was brought to the ground, the officers were able to handcuff Mr. Trammell. (Frude Aff. Ex. 5, Dkt. 25-1.)

The whole interaction—from the time Officer Fruge parked until Mr. Trammell was handcuffed, lasted only a couple of minutes. An ambulance later arrived at the scene to treat the abrasion on Mr. Trammell's face, but Mr. Trammell denied treatment. (Records from Wlliamson County EMS, 102–105, Dkt. 25-1.) The EMS technician made a statement that Mr. Trammell was "belligerent" and "obviously intoxicated" at the scene. (*Id.* at 103.) Mr. Trammell pleaded no contest to a charge of public intoxication on April 1, 2013.[2] (Trammell Plea at CORR 1106, Dkt. 32-1.)

---

[1] There is a dispute as to whether any of these strikes landed on Mr. Trammell's ribs. Mr. Trammell asserts in briefing that some of the strikes landed on his ribs, but offers very little evidence of this. His affidavit says that he lost memory while he was on the ground, but his medical reports suggest he reported pain on the right side of his abdomen. (Trammell Medical Records at Trammell – 000599, Dkt. 30-2.) The court resolves the dispute in favor of the non-moving party, Mr. Trammell.

[2] While Mr. Trammell asserts that he had not had a drink for about two and a half hours prior to his arrest, he admits having a "few cocktails" immediately before that, and never actually disputes being intoxicated in his affidavit or briefing. (Trammell Aff. ¶¶ 6–8, Dkt. 30-1.)

Six days after his arrest, on January 27, 2013, Mr. Trammell received a medical exam where he was diagnosed with three "mildly displaced" transverse process fractures.[3] Mr. Trammell's mobility has been severely restricted by the injury, such that he has "ceased riding [his] motorcycle," traveling, sailing, fishing, and playing with his new grandchild in the same way he used to. (Trammell Aff. ¶¶ 69–72.) He now uses a wheelchair in his house and anticipates that because of the incident, he will eventually need a home assistant. (*Id.* at ¶ 71–74.)

## IV. DISCUSSION

Under § 1983 a plaintiff may bring a claim alleging the violation of a right secured by the Constitution or laws of the United States against either a person or against a government entity. *See Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015). Mr. Trammell brings claims for violations of his Fourth Amendment rights against each of the seven officers individually, and against the City of Round Rock. Defendants have each moved for summary judgment on these claims. The Court will first consider whether a genuine issue of material fact remains as to Mr. Trammell's claims against the officers, then it will consider Mr. Trammell's claims against the City.

### A. Officers' Liability

Each of the defendant officers has asserted that they are protected from liability under the doctrine of qualified immunity. Defendants further argue that Officer Webb, Officer Delarosa, and Sergeant Krogmann were not involved in the alleged constitutional violation, and, to the extent the Sergeant Krogmann was involved, it was solely after the fact, and could not give rise to his liability. Thus, the Court will address (1) the liability of Officers Webb and Delarosa, (2) the liability of

---

[3] The diagnosis was "mildly displaced right L1, L2, and L3 transverse process fractures." (Trammell Medical Records at Trammell – 0006000, Dkt. 30-2.) These are fractures of the vertebrae in the lower back. Each vertebra in the back has wing-like protrusions on each side. A transverse process fracture is a fracture in one of these protrusions, usually caused by extreme twisting. *E.g.*, *Transverse Process Fracture*, Sports Injury Clinic (visited June 27, 2016), http://www.sportsinjuryclinic.net/sport-injuries/low-back-pain/transverse-process-fracture.

Sergeant Krogmann, and (3) the liability of the remaining officers, Officers Fruge, Garza, Ingles, and Neveu.

### 1. Officers Webb and Delarosa

In his response to their motion for summary judgment, Mr. Trammell states that he is "no longer seeking liability against Officers Delarosa and Webb." (Dkt. 28 at 2 n.1.) Because Mr. Trammell has yet to file a motion dismissing claims against these two officers, the Court will address their motion for summary judgment.

In his complaint Mr. Trammell claims that "[t]he officers who were not personally involved in using excessive force against [him] failed to intervene in preventing the unconstitutional use of excessive force." (Compl. ¶ 36; Dkt. 1.) Generally, "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).

Here, however, Officers Webb and Delarosa cannot be held liable for their failure to intervene. It is undisputed that Officer Delarosa never arrived at the scene of Mr. Trammell's arrest. (Delarosa Aff. ¶¶ 4–5, Dkt. 24-2.) It is also undisputed that although Officer Webb did arrive at the scene, Mr. Trammell was in custody when he arrived, and Officer Webb did not "touch[] [Mr. Trammell] on the night of th[e] incident." (Webb Aff. ¶ 5, Dkt. 24-3.) Instead, all of his attention at the scene of the arrest was directed toward Mr. Trammell's passenger, Ms. Pierce, who Officer Webb arrested based on an outstanding warrant in Travis County. (*Id.* ¶¶ 5–6.)

Because Officer Webb never arrived at the scene, and Officer Delarosa only arrived at the scene after Mr. Trammell was in custody, neither could have intervened in another officer's use of force in arresting Mr. Trammell because it occurred while they were not present. Thus, Officers Webb and Delarosa cannot not be held liable under § 1983, and summary judgment must be granted in their favor.

**2. Sergeant Krogmann**

Sergeant Krogmann also moved for summary judgment on Mr. Trammell's claim for failure to intervene, asserting that like Officers Webb and Delarosa, he was not sufficiently involved at the scene of Mr. Trammell's arrest to warrant liability. In response, Mr. Trammell argues that Sergeant Krogmann's actions *after* the arrest demonstrate his failure to supervise his subordinates, and that material disputes of fact on these issues remain. The Court will consider both the failure to intervene and failure to supervise claims.

As stated above, an officer may be held liable for failure to intervene when he is present at the scene but "does not take reasonable measures to protect a suspect from another officer's use of excessive force." *Hale*, 45 F.3d at 919. In order for a supervisor to be held liable for a § 1983 claim for failure to supervise, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (internal quotations omitted).

Here, Sergeant Krogmann is entitled to summary judgment on the failure to intervene claim. The facts alleged by Sergeant Krogmann—that he was not directly involved in the arrest of Mr. Trammell and did not arrive at the scene until after Mr. Trammell was in custody (Krogmann Aff. ¶¶ 3–4, Dkt. 24-1)—are not disputed (Pl.'s Resp. to Mot. Summ. J., Dkt. 28). Thus, Mr. Trammell cannot be held liable for a failure to intervene in the arrest or use of excessive force, and his motion for summary judgment on that claim must be granted.

Further, Mr. Trammell's arguments that there are genuine issues of material fact precluding summary judgment on his failure to supervise claim against Sergeant Krogmann are meritless. Mr. Trammell asserts that there are two key disputed fact issues: (1) whether Sergeant Krogmann inappropriately "interject[ed] himself in [his subordinates'] reporting process to ensure an 'agreed'

version of events, and (2) whether he "fail[ed] to identify [constitutional violations] and further train the officers on his shift—Fruge, Ingles, Nevue, and Graza—about the constitutional violations that took place against Plaintiff." (Dkt. 28 at 9.) But both of these issues relate to disputes about Sergeant Krogmann's behavior *after* the alleged constitutional violation. Thus, at the least, it is clear that Mr. Trammell has failed to identify any evidence to show a "causal link" between Sergeant Krogmann's acts and the alleged constitutional violation. In fact, nowhere in his response to the motion for summary judgment or even in his complaint does Mr. Trammell allege *any facts* in support of the casual link element of his failure to supervise claim against Sergeant Krogmann. (Dkt. 1; Dkt. 28.)

The Court cannot, however, grant summary judgment to Sergeant Krogmann on Mr. Trammell's failure to supervise claim because Krogmann never moved for summary judgment on the claim, and has not meet his initial burden. The Court intends to address the claim *sua sponte*, and will grant Plaintiff ten days to provide any evidence it has in support of its claim for failure to supervise against Sergeant Krogmann.[4]

### 3. Officers Fruge, Garza, Ingles, and Neveu

Unlike the other officers, Officers Fruge, Garza, Ingles, and Nevue admit involvement in Mr. Trammell's arrest. They move for summary judgment arguing first that there was no constitutional violation, and second that they are entitled to qualified immunity. Because Mr. Trammell alleges two different constitutional violations, unlawful arrest and excessive force, the Court will first review the qualified immunity standard, then address each alleged violation— unlawful arrest and excessive force.

Public officials are protected from suit by qualified immunity so long as their conduct does not violate a clearly established constitutional right. *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011). "To determine whether a public official is entitled to qualified immunity, we decide

---

[4] *See* Fed. R. Civ. P. 56(f); *Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 436 (5th Cir. 1992) ("A district court may grant a motion for summary judgment *sua sponte*, provided that it gives proper notice to the adverse party.").

(1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (internal quotations omitted). "A right is clearly established when 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Jones v. Lowndes Cty.*, 678 F.3d 344, 351 (5th Cir. 2012)).

Once a defendant has properly raised the defense of qualified immunity, the plaintiff bears the burden of negating the defense. *See Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). "This standard, even on summary judgment, gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).

### a. Unlawful Arrest

An arrest is unlawful where it is not supported by probable cause. *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004). "Probable cause exists where the facts and circumstances within the officer's knowledge at the time of the arrest 'are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007). (citing *Flores*, 381 F.3d at 402). Where there was probable cause for any of the charges made against a suspect, "then the arrest was supported by probable cause, and the claim for false arrest fails." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). "If an officer reasonably but mistakenly believes that probable cause exists, he is entitled to qualified immunity." *Ramirez*, 716 F.3d at 375. The four officers involved in Mr. Trammell's arrest assert that probable cause existed for public intoxication, resisting arrest, and evading arrest. (Dkt. 25 at 8).

The Court finds that Officer Fruge had probable cause to arrest Mr. Trammell for public intoxication. In Texas, a person commits the offense of public intoxication if he appears in a public

place while intoxicated to the degree that he may endanger himself or another. Tex. Pen. Code §
49.02(a). Because intoxicated drivers "are a grave threat to the public," an officer may reasonably
conclude that an intoxicated person who is in a position to drive a motor vehicle is a danger to
himself or others. *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995).

Here, Officer Fruge had sufficient reason to conclude that Mr. Trammell was intoxicated
and that he might endanger himself or others. Officer Fruge and the other officers were responding
to a 911 call regarding an intoxicated driver who had wrecked his motorcycle. As Officer Fruge
approached the scene in his vehicle, bystanders pointed him to where Mr. Trammell was parked
across the street. After Officer Fruge exited his vehicle and approached Mr. Trammell, he smelled a
strong odor of alcohol. In addition, Officer Fruge had to repeat his questions to Mr. Trammell
before he received a response, Mr. Trammell's speech was slurred in responding, and Mr. Trammell
provided non-responsive and uncooperative answers. Mr. Trammell was also standing next to his
motorcycle, and, if he was not arrested, could have proceeded to drive again. Given the entirety of
the circumstances, it was reasonable that Officer Fruge concluded that Mr. Trammell had
committed the offense of public intoxication.

Further, the other officers were reasonable in relying on Officer Fruge's assessment of
probable cause given the circumstances. *See Deville*, 567 F.3d 156, 166 (5th Cir. 2009) (holding that
where an officer relies on another officer's statement that probable cause exists in making an arrest,
they are "entitled to qualified immunity from liability in a civil rights suit for unlawful arrest
provided it was objectively reasonable for him to believe . . . that probable cause for the arrest
existed"). The other officers were also responding to the 911 call regarding an intoxicated
motorcyclist. They had no reason to believe that Officer Fruge's assessment that probable cause

existed was wrong. Based on the foregoing, the Court grants the motion for summary judgment on Mr. Trammell's claim for unlawful arrest by Officers Fruge, Graza, Ingles, and Nevue.[5]

### b. Excessive Force

"To prevail on an excessive-force claim, a plaintiff must show (1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015) (internal citations omitted). The reasonableness of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396–97. In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court identified three factors Courts should consider when assessing whether excessive force was reasonable: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.* at 389. "Claims of excessive force are fact-intensive; whether the force used was 'clearly excessive' and 'clearly unreasonable' depends on 'the facts and circumstances of each particular case.'" *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) (quoting *Graham*, 490 U.S. 386, 396 (1989)). Further, courts are to review the danger an officer would have reasonably believed he was in at the moment of the threat that resulted in the use of force. *Mason*, 806 F.3d at 276.

Here, the Court finds, based on material undisputed facts, that the officers' use of force in arresting Mr. Trammell was not objectively unreasonable and that they are entitled to qualified immunity.[6] The Court analyzes the force used at three different times during the arrest: (1) Officer

---

[5] Further, Mr. Trammell's plea of no contest for public intoxication requires that Mr. Trammell's claims for unlawful arrest be dismissed. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).

[6] As courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand," *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), the Court will first address the issue of reasonableness first.

Fruge's initial knee strike, (2) Officer Garza's headlock maneuver, and (3) the knee strikes used while Mr. Trammell was on the ground.

### 1. Fruge's Initial Knee Strike

Mr. Trammell was intoxicated when Officer Fruge arrived on the scene, and he admitted to Officer Fruge that he had just parked his motorcycle. His answers to Officer Fruge's questions were unresponsive and evasive. Immediately before Officer Fruge tried to arrest him, he refused to comply with Officer Fruge's order to walk towards him or to place his arms behind his back. He then told Officer Fruge that he was not going to answer his questions, and stated "I'm not going to jail," which Officer Fruge could have reasonably interpreted as indicating that Mr. Trammell intended to resist arrest or flee.

Officer Fruge then stepped toward Mr. Trammell to pull his arm behind his back and place him in handcuffs. In response, Mr. Trammell pulled his arm forward, and away from Officer Fruge. As he was doing this, Officer Fruge responded by knee-striking Mr. Trammell in the right thigh.

In his briefing, Mr. Trammell argues that this initial use of force by Officer Fruge was unreasonable. Based on the factors discussed in *Graham*, the Court disagrees. While public intoxication is a minor offence, Mr. Trammell had physically resisted arrest by pulling his arm away from Officer Fruge and verbally resisted arrest by saying "I'm not going to jail." Mr. Trammell had also failed to comply with Officer Fruge's commands to walk toward him and place his arms behind his back. Further, Mr. Trammell was still only steps away from his motorcycle, and could be a danger to Officer Fruge and others if he tried to drive intoxicated. In light of these considerations, Officer Fruge's single knee strike to Mr. Trammell's right thigh—which he explained was to gain control of Mr. Trammell for handcuffing (Fruge Aff. ¶ 6)—was not clearly excessive or unreasonable. "[O]fficers are trained to use nonlethal force to gain compliance if a subject actively resists arrest and does not comply with verbal task directions." *Carroll v. Ellington*, 800 F.3d 154, 174

(5th Cir. 2015). Specifically, in one case identified by the defendants, the Seventh Circuit described a knee strike as a "minimal use of force," and deemed it an appropriate response to resistance. *Smith v. Ball State Univ.*, 295 F.3d 763, 770 (7th Cir. 2002).

Mr. Trammell asserts that "resistance did not exist." (Dkt. 30 at 8.) He argues that he "was not violent, not shouting, . . . had not used force, was not belligerent, [and] was polite." (Dkt. 30 at 10.) He also notes a number of questions that Officer Fruge didn't ask, including whether Mr. Trammell intended to ride his motorcycle, and noted that the officer never stated that he was under arrest. The Court rejects these arguments for two reasons.

First, the Court finds that Mr. Trammell's assertion that "resistance did not exist" conflicts with the verbal and physical resistance he admits to in his affidavit. (Trammell Aff. ¶¶ 34, 36, 38, 40–41.) Thus, while some of the descriptions of his behavior are true—he was not violent or shouting—they do not overcome the undisputed facts indicating his resistance.

Second, it's unclear whether a reasonable officer would have taken any of the alternate paths suggested by Mr. Trammell. Mr. Trammell had just stated that he would not answer any more of Officer Fruge's questions, indicating that asking more would likely be futile. Further, Mr. Trammell had stated that he was not going to jail. A reasonable officer could have been concerned that telling Mr. Trammell that he was under arrest (after Mr. Trammell had already ignored the officer's instruction to place his hands behind his back) might have caused him—or at least given him the opportunity—to fight back or flee.

Ultimately, however, the Court refuses to engage in the sort of hindsight analysis Mr. Trammell's observations suggest. Assessing whether Officer Fruge could have asked a few more questions or told Mr. Trammell that he was under arrest to achieve a better result is not the job of this Court. Instead, the after reviewing the facts and circumstances known to Officer Fruge at the

time, the Court determines that the Officer's actions were not objectively unreasonable and that he is entitled to qualified immunity for his initial use of force.

### 2. Garza's Headlock

After Officer Fruge's initial knee-strike, Mr. Trammell lost his balance and was brought to the ground by Officers Fruge, Neveu, and Garza, causing abrasions to Mr. Trammell's face. In bringing Mr. Trammell to the ground, Officer Garza used a headlock. While Mr. Trammell does not separately identify this action as unreasonable, the Court determines that it was not objectively unreasonable. At the time Officer Garza helped to bring down Mr. Trammell, he had just watched as Mr. Trammell took off his jacket and told Officer Fruge that he wasn't going to jail. Officer Garza thought this may have been an indication that Mr. Trammell was preparing for a fight. Whether Officer Garza was actually wrong—and the Court assumes that he was—because Mr. Trammell was only removing his jacket to cool off is irrelevant.[7] Instead the Court concludes that, in light of all the circumstances, Officer Garza's assessment of the threat posed by Mr. Trammell, and the force used in response, was not objectively unreasonable, thus he is entitled to qualified immunity for this act.

### 3. Officer's Knee Strikes on the Ground

Once on the ground, Mr. Trammell's arms were beneath his body and the officers struggled to try to get them in handcuffs. The officers used knee strikes to Mr. Trammell's arms, thighs, and ribs in an attempt to subdue him so that they could pry his arms out from under him so that he

---

[7] Defendants point to the Seventh Circuit's decision in *Smith v. Ball State Univ.*, 295 F.3d 763, 770–71 (7th Cir. 2002) as an appropriate comparison, and the Court agrees. In *Ball State*, two officers were removing an unconscious driver from a vehicle. When another officer approached the scene, he mistakenly thought there was a struggle, and attempted to knee strike the suspect. His attempted knee strike brought the other officers and the unconscious driver to the ground, causing injuries to the driver's face. The court explained, "[a]lthough we accept as true the fact that Smith was not actively resisting, a reasonable officer who happened on the scene could reasonably misconstrue Smith's unresponsiveness as resistance requiring the minimal use of force." *Id.* at 771. Here, Officer Garza overheard Mr. Trammell's actual resistance, and misinterpreted Mr. Trammell's removal of his jacket as an indication that he was preparing to fight. This misunderstanding was reasonable.

could be handcuffed. Again, the Court finds that this use of force is not objectively unreasonable. In *Carroll v. Ellington*, 800 F.3d 154, 176 (5th Cir. 2014), a suspect "failed to comply with verbal task directions and actively resisted all attempts to subdue and detain him." *Id.* at 176. Officers stuck him five to seven times in the thigh area, twice on his arm, and once in the back with a hickory baton, and kicked him once in the stomach. *Id.* at 164–66. The Fifth Circuit noted that "only nonlethal force was used" in this portion of the encounter and held that each officer involved was entitled to qualified immunity. *Id.* at 176.

Similarly, here, Mr. Trammell failed to comply with directions from Officer Fruge, pulled his arm away from Officer Fruge, and was keeping his arms underneath him while on the ground, such that the officers could not handcuff him. In response, the officers struck him with their knees in the arms, thigh, and ribs. This force was non-lethal, and likely less severe than the force used by the officers in *Carroll*. And like in *Carroll*, the Court determines that the officers involved here are entitled to qualified immunity.

Based on the forgoing, the Court grants Officers Fruge, Garza, Neveu, and Ingles summary judgment on Mr. Trammell's excessive force claim based on qualified immunity.

### c. Failure to Train

At the time of Mr. Trammell's arrest, Officer Ingles was working as a Field Training Officer, supervising Officer Garza. The Court acknowledges that Officer Ingles, like Sergeant Krogmann, did not move for summary judgment on a claim for failure to supervise. Based on Plaintiff's complaint and briefing in response to Defendants' motions for summary judgment, it is unclear whether they intend to bring the claim against Officer Ingles. Plaintiff raises the issue only in his

response to the City's motion for summary judgment. The Court, however, intends to address this claim *sua sponte*, and grants Mr. Trammell ten days to produce evidence in support of his claim.[8]

### B. Municipal Liability

Mr. Trammell brings claims under 42 U.S.C. § 1983 alleging that the City violated his Fourth and Fourteenth amendment rights by failing to train its officers and failing to supervise its officers. Because the Court has not resolved the question of whether a constitutional violation occurred during Mr. Trammell's arrest, the Court will assume that a violation did occur to assess whether the City can be held liable for that violation.

Municipalities and other local governments may be held liable for constitutional violations under § 1983 when official policy or custom caused those violations. *Bennett v. City of Slidell*, 728 F.2d 762, 766 (5th Cir. 1984). Municipalities may not, however, be held liable for such violations under theories of respondeat superior or vicarious liability. *Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). Instead, municipal liability is only appropriate when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." *Id.* at 694. As a result, to establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). These elements are "necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The City moved for summary judgment on Plaintiff's failure to train claim and his failure to supervise claim; the Court will address these claims separately.

---

[8] *See* Fed. R. Civ. P. 56(f); *Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 436 (5th Cir. 1992) ("A district court may grant a motion for summary judgment *sua sponte*, provided that it gives proper notice to the adverse party.").

### 1. Failure to Supervise

The City asserts that Mr. Trammell's failure to supervise claim fails because the City's policies are constitutional and because Mr. Trammell otherwise has no evidence of (1) an unconstitutional custom among the officers, (2) that a final policymaker promulgated or condoned a policy or custom that was the moving force behind the violation, or (3) that a final policymaker acted with deliberate indifference.

In response, Mr. Trammell asserts that Officer Ingles failed to supervise Officer Garza, who she was supervising at the time of Mr. Trammell's arrest. Specifically, Mr. Trammell asserts that Officer Ingles is "an agent for the City of Round Rock." (Dkt. 31 at 8.) Because Mr. Trammell raised this argument in response to the City's motion for summary judgment, and did not raise the argument in response to Officer Ingles' motion for summary judgment, the Court understands Mr. Trammell's argument to be that because Officer Ingles was training Officer Garza on behalf of the City, the City can be held liable for her actions. The City cannot be held liable in this way. *Monell*, 436 U.S. at 694 ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."). Mr. Trammell advances no other evidence of a policy or custom that led to the alleged constitutional violation. Thus, Mr. Trammell's claims against the City for failure to supervise must be dismissed.

### 2. Failure to Train

"To prevail on a 'failure to train theory' a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010). The City argues that each of the officers involved in Mr. Trammell's arrest was adequately trained, and that Mr. Trammell has no evidence sufficient to prove the other elements of his claim. In support of

their argument, they have provided documentation of the training of each of the officers involved, demonstrating they were each adequately trained under state law.

In response, Mr. Trammell points to inconsistent answers given by Officer Fruge and Officer Webb in their depositions regarding what parts of the body officers may strike with their knees. Officer Webb generally stated that officers are trained to not strike the ribs, while Officer Fruge asserted that strikes to the side of a person's body were part of his training and the City's Response to Resistance of Aggression policy.[9] Even assuming that this inconsistency is some evidence of an inadequate training program,[10] Mr. Trammell has wholly failed to offer any evidence of the other two elements of a failure to train claim: deliberate indifference and causation. The Fifth Circuit has stressed these elements of municipal liability, warning that "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability." *James v. Harris Cty.*, 577 F.3d 612, 618 (5th Cir. 2009) (alteration in original) (citations omitted). The standard for deliberate indifference "is 'stringent' and requires that the supervisory actor disregarded a known consequence of his action." *Zarnow*, 614 F.3d at 170 (5th Cir. 2010) (providing that "[d]eliberate indifference is 'more blameworthy than negligence' but less blameworthy than purposeful harm"). Mr. Trammell identifies no supervisory actor involved in the officer's training, has no evidence that such actor disregarded a known consequence of his actions, and has no evidence that such deliberate indifference caused Mr. Trammell's injuries. Thus, Mr. Trammells' failure to train claim against the City fails.

---

[9] The Response to Resistance Policy does not expressly include the ribs as an area to avoid striking; it lists "head, throat, sternum, spine, groin, and kidneys." (Fruge Aff. Ex. 6 at CORR 767.)

[10] Plaintiff has failed to explain how this inconsistency demonstrates inadequate training. In order to demonstrate liability based on an inadequate training claim, a plaintiff must show how a particular training program is defective. *See Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). Plaintiff identifies no specific deficiency of the officers' training. Officer Webb is not a policymaker for the City, and his recollection of his training does not necessarily reflect how the City's officer were trained or how they should be trained. And even if it were, Officer Fruge's singular misunderstanding of the policy, alone would not be enough to demonstrate inadequate training. *Zarnow*, 614 F.3d 161, 170 (5th Cir. 2010) ("[T]his Court has previously rejected attempts by plaintiffs to present evidence of isolated violations and ascribe those violations to a failure to train.").

## V. CONCLUSION

The Court **GRANTS** the motions for summary judgment of Officers Delarosa, Webb, Fruge, Garza, and Neveu and the City of Round Rock on all claims against them. The Court **GRANTS** the motions for summary judgment of Sergeant Krogmann on Plaintiff's failure to intervene claim and Officer Ingles on Plaintiff's unlawful arrest and excessive force claims and provides **NOTICE** to Plaintiff that it seeks to resolve the failure to supervise claims against Sergeant Krogmann and Officer Ingles *sua sponte*. The Court **GRANTS** Plaintiff ten (10) days to produce all evidence he has in support of the failure to supervise claims against Sergeant Krogmann and Officer Ingles.

     **SIGNED** on June 29, 2016

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE